```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                          BLUEFIELD
```

**UNITED STATES OF AMERICA**

**v.**                                        **CRIMINAL NO. 1:21-cr-00037**

**JAMES BRADDOCK BIGGERMAN**

<u>**SENTENCING MEMORANDUM OF THE UNITED STATES**</u>

Comes now the United States of America by Assistant United States Attorney Jennifer Rada Herrald and files this Sentencing Memorandum.

**BACKGROUND**

Defendant, over the course of approximately one month, engaged in a spree of crimes involving the sexual exploitation of two 13-year-old girls that he found online. As set forth in the offense of conviction, his conduct involved the enticement of two minors to engage in illegal sexual activity. Defendant arranged not only to engage in illegal sexual activity with two children – he also indicated that he was willing to pay for this sexual activity (sex trafficking) and make a video recording of it (production of child pornography). Throughout these conversations with both minors, defendant sent numerous images of his penis and videos of himself masturbating (distribution of obscene materials to a minor under the age of 16). Per these arrangements, defendant then drove over four hours from Hedgesville, West Virginia to

Bluefield, West Virginia (during which time he traveled across state line, yet another offense) to meet the first victim.

Upon arrival in Bluefield, defendant intended to have sex with the 13-year-old Minor Female 1. Defendant had previously offered to pay Minor Female 1 as an enticement for her to engage in this sexual activity. Defendant then intended to transport Minor Female 1 to Charleston, West Virginia, to meet up with her friend, Minor Female 2. At that point, defendant intended to engage in sexual intercourse and oral sex with both children and create a video of this sexual abuse. Fortunately, while defendant had sought out and began these conversations with two real children located across the state, his actions had been discovered and his ultimate meeting was with law enforcement rather than Minor Female 1. Defendant, however, fully intended to sexually abuse the two real girls.

While this conduct by defendant alone is egregious and calls for a substantial sentence, it is not the extent of defendant's inappropriate and concerning behavior. During his conversations with the undercover officer, defendant stated that he was planning to pay two minors in his area (allegedly 16 and 17 years of age) to engage in sexual activity with him. See Exhibit 1 (screenshots of Instagram conversation between defendant and undercover officer). Messages from his phone indicated that he indeed had

2

made such arrangements with a girl in Martinsburg. See Exhibit 2 (excerpts from defendant's text messages with highlights).[1]

As noted in the PSR, defendant's conduct toward Minor Female 2 (during the time when it was the actual minor involved in the communications) was "very persistent" despite her repeated attempts to tell him to leave her alone. Defendant went so far as to engage in manipulation by threatening to harm himself if she stopped talking to him. The concerning tendency of defendant toward obsessive behavior is also corroborated through his phone records regarding the same girl in Martinsburg with whom he had arranged to pay for a threesome. Call logs recovered from defendant's phone reveal that there were 185 calls between defendant and that girl between June 3 and July 16, 2020; out of those calls, over 140 were calls made by defendant that appear to have gone unanswered (that is, with a duration of less than 30 seconds). See Exhibit 3 (call log with highlights). Defendant has not only sought out and arranged illegal sexual activity – he has demonstrated that he does so *obsessively*.

This recent conduct is in addition to the defendant's conduct as a minor. As noted by both defendant's expert and the PSR, when

---

[1] There is reason to believe that defendant may have been lying to the undercover officer about the actual ages of the girls and they may have been young adults – law enforcement was unable to confirm the ages of the two girls. Due to the fact that this arrangement may have been with consenting adults, the United States did not object to the information being omitted from the PSR.

he was approximately 14 years old defendant inappropriately touched a 13-year-old girl without her consent. Defendant was placed on probation for a year as a result and apparently underwent a course of therapy.

**GUIDELINE CALCULATION**

Overall, defendant's conduct exhibits numerous aggravating factors that require a substantial period of incarceration. The guideline enhancements are appropriate as calculated. Defendant used a computer in an active manner when he sought out and groomed two 13-year-old girls over the internet. This was not a passive use of a computer to download child pornography – it was the very active use of a computer to arrange for the sexual abuse of two minors. Defendant also clearly engaged in a serious pattern of conduct that involved the intended victimization of two different children in a variety of ways. The enhancement under §4B1.5 is designed to account for this conduct, and defendant's actions certainly warrant its application. The mere fact that the guidelines, as appropriately calculated, suggest a very lengthy term of incarceration does not render that range inappropriate.

**RESPONSE TO EXPERT REPORT**

Defendant has submitted an expert report from psychologist Dr. Ellis. This report flags what Dr. Ellis describes as signs of immaturity that serve as mitigating factors. These include defendant's statements to the minors that he loved them, his

4

discussions of having a relationship in the future with the girls, the very graphic sexual statements that he made to the minors, and the fact that his awareness of the potential risk of arrest did not deter his pursuit of sexual activity with the children. However, each of these actions also can constitute either classic grooming behavior or extremely common conduct by those who sexually abuse children.

Perpetrators frequently express feelings of love or an interest in a long-term relationship to gain the trust of minors. Crude and graphic discussions of sexual activity are the norm, not the exception, in conversations arranging sex with minors. And it is the rare case, at least in terms of defendants who chat with and meet undercover officers, where a defendant does not express a genuine concern that he is walking into a law enforcement trap, but his desire to engage in the criminal sexual activity overcomes that fear. There is no reason that these classic behaviors, when exhibited by defendant, are a sign of simple immaturity that can easily be overcome, but in all the other cases they represent deviant grooming behavior and a compulsion to seek out sex with minors.

During his conclusions, Dr. Ellis also referenced defendant's prior therapy after he inappropriately touched a 13-year-old girl. Dr. Ellis stated that the "course of care was effective." The United States disagrees with this characterization. Assuming that

5

the goal of such therapy is to prevent future sexual abuse by the patient, defendant's prior treatment clearly failed after a relatively short period of time. If an apparently successful course of treatment failed to curb defendant's tendency toward inappropriate sexual conduct, there is little reason to trust that future treatment will result in a different outcome.

Dr. Ellis also points to his suspicion that defendant presents with some degree of Autism Spectrum Disorder and its concurrent challenges with understanding social cues as an explanation for defendant arranging to have sex with two minors and produce a child pornography video. Social awkwardness and a restrictive upbringing may cause defendant to have some challenges in finding a girlfriend, but they certainly cannot explain the defendant engaging in such egregious conduct with these two minors. Even if his possible condition and background contributed to explaining why he could commit these crimes, it does not mitigate the danger he poses nor negate the substantial harm he did to two children and their families.

## CONCLUSION

As set forth above, defendant's conduct in this case was reprehensible and sought to sexually exploit two children in numerous ways. Defendant took every step necessary to successfully have sex with two children and produce a video recording of this abuse; had law enforcement not intervened, there is no doubt that

6

defendant would have committed his planned crimes. The serious nature of the crime, the need for just punishment, the need to protect the community from future crimes by defendant as suggested by the advisory guideline range.

However, the United States acknowledges that defendant was only 20 years old at the time of the offense. While his age does nothing to reduce the harm he inflicted or the egregious nature of his conduct, it could serve as a basis for a downward variance. The United States submits that, when considering the circumstances of the case, a sentence somewhat below the guideline range of 300 months considers defendant's age while adequately capturing the gravity of his conduct.

Such a sentence is also consistent with the most factually-similar case within this district – <u>United States v. Conner Blevins</u>, Criminal No. 3:19-cr-00132. Blevins, who was only 18 years old at the time of his offense, traveled from Virginia to Mason County, West Virginia, for the purpose of having sex with two 11-year-old girls and recording a video of this sexual activity. Defendant had met the girls on Facebook, and during their online communications he described how they were in a relationship and in love and made plans on how he and one of the girls could be together once she was older. Unfortunately, law enforcement did not foil Blevins plan, and he did engage in his intended crimes. Blevins, who pled guilty to production of child pornography, faced a

guideline range of 30 years (the statutory maximum). Based primarily upon his age, the district court varied downward and sentenced the defendant to 25 years in prison.

While defendant, through no actions of his own, was unable to complete his crimes, he had every intention of having sex with two 13-year-old girls and producing child pornography. The harm he inflicted upon two actual minors was real. A sentence consistent with the sentence imposed in <u>Blevins</u> is an appropriate resolution of the case and considers the primary mitigating factor – the defendant's age. It also serves to avoid unwarranted sentencing disparities between similarly situated defendants.

        Respectfully submitted,

        WILLIAM S. THOMPSON
        United States Attorney

        <u>/s/Jennifer Rada Herrald</u>
        JENNIFER RADA HERRALD
        Assistant United States Attorney
        WV Bar No. 12181
        300 Virginia Street, East
        Room 4000
        Charleston, WV 25301
        Telephone: 304-345-2200
        Fax: 304-347-5104
        Email: jennifer.herrald@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "SENTENCING MEMORANDUM OF THE UNITED STATES" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 28th day of October, 2021 to:

>Tim C. Carrico, Esq.
>Carrico Law Offices LC
>105 Capitol Street, Suite 300
>Charleston, WV 25301
>tcarrico@carricolaw.com

>/s/Jennifer Rada Herrald
>JENNIFER RADA HERRALD
>Assistant United States Attorney
>WV Bar No. 12181
>300 Virginia Street, East
>Room 4000
>Charleston, WV 25301
>Telephone: 304-345-2200
>Fax: 304-347-5104
>Email: jennifer.herrald@usdoj.gov